All rise. The United States Court of Appeals for the Federal Circuit is now open. End session. God save the United States and His Honorable Court. Please be seated. Our first case today, 2016-2372, In Re Ellis, Mr. Oliverio. If you'll please the court, good morning. My name is, excuse me, Lawrence Oliverio, for the appellant. And I'm not going to stand here and repeat what's in the briefs. You've read the briefs. You have them. You have certainly understood them as well as they can be understood. There are two things I would like to say, though, that are not necessarily stated in the briefs. I have some questions from the truth, actually. In the blue brief, page 16, 16. I see a digital figure at the bottom of the page. A digital figure. Yeah, a cartoon kind of a cartoon figure. Yes. Yeah. Where is that in the record? It's stated in the reference itself. Your Honor. Well, I'm sorry. The figure itself is not literally in the record. Oh, so it's not in the record. That's correct. And so the one at page 20 is not in the record. The one at 21 is not in the record. The one at 39 is not in the record. Cartoon figures are not in the record. Not literally in the record. That's correct. Well, a picture is worth a thousand words, Your Honor. That's the point. Then the point is the point is not in the right is to make these briefs as expressive and as clear. I thought the point was to confine your statements of factual information to the record. Well, this wasn't presented below. Right. Pardon. These cartoons were not presented below. The cartoons were not included in the briefs in this literal form. That's correct. OK. So what was it that you said is not necessarily stated in the brief? Well, the the Patent Office, Your Honor, in in its reply brief states and I'm looking at page 19. They state at least four things on that page that are, as a matter of technology, factual reality, untrue, incorrect, and don't apply to this case. They say, for example. Page 19 did you say? I'm sorry? Page 19? Page 19. OK. In which brief? In the Patent Office, the solicitor reply brief. Response. They say one of ordinary skill in the art would desire to reduce electrical arcing that would otherwise eventually degrade the connection characteristics of an electrical connection system. That's just flat out as applied to the Schlesinger reference. Not true. Well, how do we know it's not true? I mean, the reference itself, Your Honor. The Schlesinger references we've explained in the briefs is confined. There is only by the way, this is another point that I meant to make. That's not that I didn't necessarily make in these briefs. Schlesinger waived then. Pardon. If you didn't make it in the briefs, isn't a point. You have points and authorities, you know, isn't a point waived if it's not in the brief. Your Honor, I'm not making a new argument. I'm just explaining in different words what's in the reference. This is not a new argument. But isn't what the prior shows a factual question that we have to give deference to the board's determinations? No, not if they're factually incorrect, not if the reference itself contradicts what the board concludes. At page 21 of your of your blue brief, you say any person skilled in the art would recognize immediately on reading Schlesinger that the one quarter inch Schlesinger phone jack of figure 12 will, quote, melt down, close quote, if modified in structure to incorporate a ground or subject to the use intended by milk. Putting aside your cartoon figure frying, I don't find a support for your factual argument of why a procedure would have immediately recognized this. So show me in the in the record where that is. Well, it's it's in my reply brief. Your Honor, I cite numerous citations to support that. The for example, probably where are you in the reply? Probably. Well, in in my reply brief to the patent office. Oh, so where is that in the record, please? Well, perhaps the single best statement, I think, in the Schlesinger reference, which is stated on page 11 of our reply brief, is that this Schlesinger reference states that it uses a transformer. That all by itself tells you tells a person skilled in the art that this really device. And my question to you was, where in the record do we know that a person skilled in the art would know that? You know, I mean, you can say, well, you should know, but I need to know from the record. Well, what I'm saying is that the record teaches that to a person skilled in the art. Yes. And where does Schlesinger mention alternating current? I'm sorry. Where does Schlesinger mention alternating current? The fact that the fact that it talks about a transformer. First of all, only alternating current can be transformed to direct current cannot be transformed. Where's that in the record? That's just the reality of factual technology reality. It can't be that statement in and of itself teaches any person who knows anything about electricity, knows anything about transform transforming electrical signals, that that signal is necessarily an alternating current signal. You previously characterized phone jacks such as those and Ellis as DC current systems. Right. I use that phrasing. Your Honor, I will admit here today on the record that we said that that is that is incorrect. It's false. It's wrong. It's incorrect. It's a mistake. That's not true. There is no discussion of DC that entire this entire reference is devoted to AC. OK, so you were just wrong when you said that, that that is correct. But we also did say that this reference in another place cannot be used for DC power. OK. Why haven't you waived your teaching away argument? Why haven't we waived our teaching away argument? Yes. I mean, you admitted to the board that you didn't make the argument in your face, right? No, I didn't admit that we didn't make a teaching away argument. It's not true. The entire record of the appeal is devoted to a teaching away argument. Where does the word voltage appear in your briefs before the board? Well, it's certainly in my oral argument. It's in the affidavit that was submitted in in support of the brief. Must have been electrifying. Mr. Oliveria, would you like to save the remainder of your time for rebuttal? I'm sorry? I said, would you like to save the remainder of your time for rebuttal? Yes. OK, let's hear from the patent office. Good morning, your honors. May it please the court, Philip Warwick for the PTO. This case at its heart is really just about adding a third ground contact to the electrical contacts that are already disclosed in Schlesinger. And we know this because Mr. Ellis is not making any specific arguments about the claims that don't involve a ground contact. Claims 14, 18, and 19. You don't take the position that Mr. Ellis is not qualified to express opinions on this area of art, do you? We're not taking that position. I don't know that we would concede that he is an expert in the area. But he's certainly permitted to submit a declaration and the examiner considered the declaration actually in great detail. If you look at Appendix 675, he explains referencing the final office action where the specific problems with the declaration were identified, where he nonetheless said that he considered the declaration as part of the totality of the evidence and considering whether the claims were obvious or anticipated. But do I understand that the examiner ultimately said he discredits it in its entirety? Or did he just discredit specific portions of it? Well, he rebutted specific portions of it. But he did consider it. So he noted there were problems with it. There was a lack of evidentiary basis, for example. There was not any specific analysis of the claim language at issue. But then he went on, and this is Appendix 675 in particular, to go on to say that he was considering the declaration. They went on to consider paragraph by paragraph and rebut why the points made by Mr. Ellis were not persuasive on obviousness. What's your response to your friend on the other side when he says that the presence of a transformer in Schlesinger necessarily requires alternating current? Well, I don't know that that is necessarily true. I'm not aware of anything in the record that says one way or the other. That same paragraph in Schlesinger also talks about the possibility of being run on battery power, which is typically direct current. But in any event, the examiner found that the teachings of Schlesinger would support either alternating current or direct current. And there's been no real rebuttal to that finding. And at the end of the day, we have a prior art system that has already the positive and negative contacts, and we're just talking about adding the third contact for a ground, which is something that Mr. Ellis in his reply brief at page 8 admits is universally known to any person, even someone not skilled in the art, to have a third contact. And the reason the examiner specifically looked to Mao is that Mao teaches a ground contact that makes a connection before the positive and negative contacts do, which reduces sparking. Mao taught that that is a problem in other plug-and-jack connections, standard connections, such as what Schlesinger uses. And so it would be obvious to, instead of using that standard phono jack and plug that is disclosed in Schlesinger, to substitute the Mao reference. If your honors have no further questions. Okay, thank you, Mr. Warrick. Mr. Oliverio, you have some rebuttal time? Yeah, Your Honor, just one point. The examiner did not consider anything that Larry Ellis submitted in his brief, and I will just add one last thing. My client, Mr. Ellis, asked me to come here to tell you that it is literally impossible to reinvent, re-engineer his device from a phone jack. The phone jack is the one and only embodiment of roughly 12 different iterations that are disclosed in this Schlesinger reference that's even relevant to this case. The rest of those iterations, the rest of that disclosure, doesn't call for or disclose a mounting system, an electrically powered device that mounts via a connection that penetrates a mounting wall. The only iteration is that one phone jack. That phone jack, as depicted in that patent and described, is something that every person skilled in the art knows is purposely designed to work on microvolts, not on megavolts, not on tens of volts, not on ones of volts. They are two entirely different technologies, the Mao and the Schlesinger. To a person skilled in the art who reads those patents. Okay, thank you. Thank both counsel for their argument. The case is taken under submission.